**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**GREG MALENDA,**

        **Plaintiff,**

    **v.**                           **Civil Action 2:19-cv-167**
                                        **Judge Edmund A. Sargus**
                                        **Magistrate Judge Jolson**

**DAVID GRAY, et al.,**

        **Defendants.**

## REPORT AND RECOMMENDATION AND ORDER

This matter is before the Undersigned on the following: Defendants' Motion to Dismiss (Doc. 22); Plaintiff's Motion for Preliminary Injunction (Doc. 14); Plaintiff's Motion for Request for Subpoena (Doc. 15); Plaintiff's Motion to Amend Relief Requested (Doc. 32); Plaintiff's Motion for Production of Documents (Doc. 33); and Defendants' Motions to Strike (Docs. 35, 36).

For the following reasons, it is **RECOMMENDED** that Defendants' Motion to Dismiss, (Doc. 22), be **GRANTED in part** and **DENIED in part**. Specifically, the Undersigned **RECOMMENDS**:

- **DENYING** Defendants' Motion to Dismiss regarding Defendant Kolvec's alleged strip search of Plaintiff;

- **DISMISSING** Defendants Aubry, Murphy, Weer, Hunyadi, Stanforth, Grey, and Litzenberger from this action;

- **DISMISSING** the following claims in their entirety:
  - claims concerning the prison's grievance system;
  - claims regarding the law library; and
  - claims for deliberate indifference to Plaintiff's medical needs.

- **DISMISSING without prejudice** the following claims:
  - claims for retaliation;

- o claims pertaining to Plaintiff's legal mail; and
- o claims that Defendant Kuyrn changed, stole, manipulated, and deleted Plaintiff's legal files.

- **DENYING** Plaintiff's Motion for Preliminary Injunction, (Doc. 14).

As for the pending motions related to the pleadings and discovery, Plaintiff's Motion to Amend Relief Requested, (Doc. 32), is **GRANTED**, and Defendants' Motions to Strike, (Docs. 35, 36), are **DENIED**. Plaintiff's Motion for Request for Subpoena, (Doc. 15), and for Production of Documents, (Doc. 33), are **DENIED without prejudice**.

## I. INTRODUCTION

Plaintiff Greg Malenda is a pro se prisoner currently incarcerated at Belmont Correctional Institution ("BCI"). Plaintiff has brought a myriad of constitutional claims against 17 BCI officials and employees. (*See* Doc. 12). Broadly speaking, Plaintiff alleges that Defendants violated his First, Fourth, Eighth, and Fourteenth Amendment rights by: (1) failing to provide an effective grievance system; (2) retaliating against him for filing grievances against prison officials; (3) opening and destroying his personal mail; (4) performing an unjustified strip search in front of his dormitory; (5) denying him access to the courts by failing to provide adequate access to the prison law library; and (6) depriving him mental health and medical treatment. (*See generally id.*).

Plaintiff does not request any form of relief in his Amended Complaint. (*See id.*). But on June 26, 2019, he moved to amend and requested the following injunctive relief:

1. require all correctional staff to wear body cameras at all times;
2. require random drug testing of all staff and contractors;
3. require additional training on the proper treatment of inmates;
4. require yearly de-escalation training;
5. require additional training on handling the special needs of mentally ill and mentally challenged inmates;
6. issue identifier badges to inmates with special needs;
7. require video and audio recording of all mailroom processing;
8. require better searches of all staff and contractors;

9. require that all interactions with the Institutional Inspector and the Rule Infraction Board ("RIB") be recorded and retained for five years;
10. require that the prison's grievance procedure be provided to the inmate without special request;
11. require that the law library remain open and accessible for a minimum of 24 hours a week with access to 15 computers;
12. require that all cash slips be processed within one business day;
13. require that all outgoing legal mail be processed within one business day;
14. require that, during shake downs, inmates' legal papers be retained and not discarded;
15. bar retaliation for filing internal grievances; and
16. provide inmates with rules regarding how to file grievances.

(Doc. 32).

On May 9, 2019, Defendants filed a Motion to Dismiss for Failure to State a Claim. (Doc. 22). That Motion is now fully briefed and ripe for resolution. (*See* Docs. 22, 31, 34).

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Id*. at 57. "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement"

rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quotation marks and citations omitted).

Furthermore, although pro se complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Stated differently, "[t]he requirement for liberal construction. . . does not translate to ignoring a clear failure in the pleading to allege facts which set forth a cognizable claim." *Kidd v. Neff*, No. 1:12-cv-40, 2012 WL 4442526, at *2 (E.D. Tenn. Sept. 25, 2012 (dismissing pro se plaintiff's "incredibly vague" complaint), *see also Smith v. Breen*, No. 09-2770, 2010 WL 2557447, at *6 (W.D. Tenn. June 21, 2010) (collecting cases). Ultimately, to avoid dismissal, a plaintiff's complaint "must contain either direct or inferential allegations with respect to all the material elements" of his claims. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) (citing *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)).

## III. DISCUSSION

Defendants raise three primary arguments in support of their motion to dismiss: (1) the *Leaman* Doctrine bars Plaintiff's claims; (2) Plaintiff's Amended Complaint fails to satisfy basic pleading standards; and (3) Plaintiff fails to state an adequate claim for relief under 42 U.S.C. § 1983. (*See generally* Doc. 22).

### A. The *Leaman* Doctrine

First, Defendants assert that, as a threshold issue, the *Leaman* Doctrine bars Plaintiff from pursuing his claims in federal court. (*Id*. at 7–10). The *Leaman* Doctrine provides that a plaintiff waives his right to pursue federal claims if he first pursued those claims in the Ohio Court of Claims. *Leaman v. Ohio Dept. of Mental Retardation & Developmental Disabilities*, 825 F.2d 946, 952 (6th Cir. 1987). Before applying the *Leaman* Doctrine, the federal court must make the

4

"factual determination" that the "pro se litigant knowingly, intelligently, and voluntarily waived his federal claims when filing suit in the Ohio Court of Claims." *Asley v. Cooper*, No. 1:16-CV-338, 2017 WL 4857605, at *3 (S.D. Ohio Oct. 25, 2017), *report and recommendation adopted sub nom. Easley v. Cooper*, No. 1:16CV338, 2017 WL 5594125 (S.D. Ohio Nov. 21, 2017) (citation omitted). In making this factual determination, courts consider the pro se litigant's prior litigation experience and whether the pleadings demonstrate "an above-average understanding of the law for a pro se litigant." *Williams v. Smith*, No. 05-CV-845, 2006 WL 2192470, at *10 (S.D. Ohio Aug. 1, 2006). Specifically, courts consider "the coherency of [the litigant's] filings in both the federal and Court of Claims matters, and whether the litigant referenced the statutory waiver provision in the filings." *Troche v. Crabtree*, No. 1:12-CV-176, 2014 WL 2211012, at *2 (S.D. Ohio May 28, 2014).

Here, Defendants contend that the *Leaman* Doctrine applies because Plaintiff is an experienced litigator. They rely in part on the fact that Plaintiff has made three separate filings in this matter. (Doc. 22 at 9–10). But these filings were made within several days of each other and do not support a finding that Plaintiff has "extensive prior [ ] experience" litigating prisoner civil rights claims in federal courts. *See Lenoir v. Ohio Dep't of Rehab. & Corr.*, No. 1:17-CV-586, 2019 WL 3892470, at *4 (S.D. Ohio Aug. 16, 2019), *report and recommendation adopted*, No. 1:17-CV-586, 2019 WL 4168968 (S.D. Ohio Sept. 3, 2019) (collecting cases and declining to apply the *Leaman* Doctrine to plaintiff's first prisoner civil rights lawsuit filed in federal court).

Defendants also assert that Plaintiff's pleadings reflect those of an experienced litigator, contending that Plaintiff "properly captioned the case, cited accurate jurisdictional statutes, and cited relevant statutes for his constitutional claims in his Court of Claims filing." (Doc. 22 at 9–10). The Undersigned is not convinced. Plaintiff's Amended Complaint does not demonstrate "an

above-average understanding of the law for a pro se litigant such that his filing of the state matter can be deemed a knowing, intelligent, and voluntary waiver of his right to proceed with his federal claims." *Troche*, 2014 WL 2211012, at *3 (quotation marks and citation omitted). To the contrary, Plaintiff's Amended Complaint contains multiple spelling errors, minimal factual allegations, and no reference to statutory waiver. *See, e.g.*, *id.* (finding that plaintiff did not knowingly and voluntarily waive his claims where "[t]he pleading [was] hand-written, contain[ed] multiple spelling errors, and minimal factual allegations").

In sum, neither Plaintiff's prior litigation experience nor the substance of his pleadings demonstrate that he is an experienced litigator. The Undersigned therefore finds that Plaintiff did not make a knowing, intelligent, and voluntary waiver of his right to pursue his claims in federal court, and, consequently, the *Leaman* Doctrine does not apply.

### B.  Sufficiency of the Pleadings

The Undersigned turns now to Defendants' argument regarding the sufficiency of Plaintiff's Amended Complaint. At a high level, Defendants argue that Plaintiff's Amended Complaint fails to satisfy basic pleading standards and must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 22 at 10–11). The Undersigned finds some merit in this argument.

As noted, to survive a motion to dismiss, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And, while "detailed factual allegations" are not required, the Federal Rules of Civil Procedure require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quotation marks and citations omitted). At

base, the purpose of this requirement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (citation omitted).

Here, much of Plaintiff's Complaint fails to satisfy basic pleading requirements. Several examples from Plaintiff's Amended Complaint are illustrative.

> 9) Defendant sergeant Weer is accused of failed to address the complaint made on defendant Everhart and Sattler, failed to investigate the report. These doings violated and deprived plaintiff of his 1st Amendment against the United States Constitution, when he deprived plaintiff of his right to exercise his freedom of speech and to petition the government for a redress of grievance, and a violation against the 4th , Amendment against the United States Constitution when defendant deprived plaintiff for unreasonable search and seizers, and defendant violated plaintiff 8th, Amendment right against the United States Constitution when he was deprived by defendant for causing cruel and unusual punishments when defendant acted indifference against the policy of Administrative Rules of ethical practices. Plaintiff was also deprived his 14th Amendment against the United States Constitution when defendant is deprived liberty without a chance of Due Process of law and equal protection to his prison rights.

> 10) Defendant E. Hunyadi is accused of failed to address the complaint made on defendant Everhart, all staff, failed to investigate the reports. These doings violated and deprived plaintiff of his 1st Amendment against the United States Constitution, when he deprived plaintiff of his right to exercise his freedom of speech and to petition the government for a redress of grievance, and a violation against the 4th , Amendment against the United States Constitution when defendant deprived plaintiff for unreasonable search and seizers, and defendant violated plaintiff 8th, Amendment right against the United States Constitution when he was deprived by defendant for causing cruel and unusual punishments when defendant acted indifference against the policy of Administrative Rules of ethical practices. Plaintiff was also deprived his 14th Amendment against the United States Constitution when defendant is deprived liberty without a chance of Due Process of law and equal protection to his prison rights.

(Doc. 12 at 5).

As the above examples demonstrate, Plaintiff's Amended Complaint fails to set forth detailed factual content, let alone facts that support each element of his constitutional claims. *See Iqbal*, 556 U.S. at 678. Rather, he resorts to conclusory factual allegations before seemingly copying and pasting vague conclusions of law. "[I]n the context of a civil rights claim, . . .

conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim." *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008).

But despite this deficiency, the Undersigned takes Plaintiff's allegations seriously, and given his pro se status, will consider each of his constitutional claims on their merits.

## C. Constitutional Claims

### 1. *Supervisory Liability*

First, Defendants argue that Plaintiff's Amended Complaint must be dismissed because it does not allege[] that Defendants were personally involved in the violation of his constitutional rights." (Doc. 22 at 11–13).

"[T]he Sixth Circuit requires some sort of direct involvement, whether through encouragement, participation, or at the very least knowing acquiescence, in order to impose liability under § 1983." *Lupo v. Voinovich*, 235 F. Supp. 2d 782, 793 (S.D. Ohio 2002). And, relevant here, "[s]upervisory liability cannot be imposed in a Section 1983 action based on a theory of *respondeat superior* without proof of personal involvement." *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 844 (E.D. Tenn. 2011) (citing *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995)). Rather, to establish supervisory liability, "there must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Rayburn v. Blue*, 154 F. Supp. 3d 523, 531 (W.D. Ky. 2015) (quotation marks, citations, and alterations omitted). In other words, "[l]iability of supervisory personnel must be based on more than merely the right to control employees" and "cannot be based upon a mere failure to act." *Id.* (quotation marks, citation, and alteration omitted).

Here, Plaintiff seeks to impose liability on four Defendants for failing to act. Specifically, he accuses: Defendant Weer of "fail[ing] to address the complaint made on defendants Everhart

and Sattler" and of "fail[ing] to investigate the report," (Doc. 12 at 5), Defendant Hunyadi of "fail[ing] to address the complaint made on defendant Everhart and all staff" and of "fail[ing] to investigate the reports," (*id*.), Defendant Stanforth, BCI's chief medical supervisor, of "fail[ing] to address the 'Chris Aubrey' complaint made on defendants Murphy" and "fail[ing] to investigate the report," (*id*.), and Defendant Grey, the warden of BCI, of "fail[ing] to address the complaints made on all defendants and fail[ing] to investigate any reports," (*id*. at 6).

Plaintiff does not allege that these Defendants were directly involved in, encouraged, implicitly authorized, or otherwise approved the alleged unconstitutional conduct, and consequently, he has failed to state a claim for supervisory liability. *See Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *see, also Groomes*, 2008 WL 4057763, at *4 (allegations that a defendant "mishandled a grievance or failed to investigate a complaint" do not meet the "[t]he standard" for supervisory liability) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.")).

Because Plaintiff has failed to state a claim for supervisory liability, it is RECOMMENDE that Defendants' Motion to Dismiss these claims be GRANTED and that Defendants Weer, Hunyadi, Stanforth, and Grey be DISMISSED.

### 2. Ineffective Grievance System

Second, Plaintiff takes issue with the prison's grievance system. Specifically, he accuses: Defendant Haley of "illegally stopp[ing] communications to the grievance process, (Doc. 12 at 3), Defendant Kolvek of "illegally chang[ing] documents and statements once confronted with

grievances by plaintiff, and post dating write ups," (*id*.), Defendant Sattler of "bargaining with other inmates to find if she was written up in the grievance process by plaintiff," (*id*.), Defendant Haggerty of failing to "review properly filed grievances, against the officials under his control," (*id*.), Defendant Aubry of "fail[ing] to answer kites, informal complaints and investigating mental, emotional abuse by staff, workers," (*id*. at 4), Defendant Taylor of failing to "review properly filed grievances against the officials under his control," (*id*. at 7), and Defendant Callerick of "not reviewing properly filed grievances against the officials under his control," (*id*.).

As Defendants note, "[t]here is no cause of action for the improper adjudication of, or failure to adjudicate, an inmate's grievances." *Taylor v. Luttrell*, No. 06-2522-AN/V, 2008 WL 4065927, at *5 (W.D. Tenn. Aug. 27, 2008); *see also Irvin v. Fluery*, No. 2:07-cv-117, 2007 WL 3036493, at *3 (W.D. Mich. Oct. 16, 2007) ("[T]he Sixth Circuit and other circuit courts have held that there is no constitutional right to access to an institutional grievance procedure.").

Because Plaintiff has no constitutional right to an effective prison grievance system, it is RECOMMENDED that Defendants' Motion to Dismiss these claims be GRANTED.  And, as this is the only claim lodged against Defendant Haley, it is RECOMMENDED that he be DISMISSED. *See, e.g.*, *Groomes*, 2008 WL 4057763, at *4 ("Plaintiff also cannot sue any defendant for refusing to give him a grievance form, or for improperly handling or processing his grievances, because there is no cause of action for the improper adjudication of, or failure to adjudicate, in inmate's grievances.").

### 3. Retaliation

Third, Plaintiff contends that a number of Defendants retaliated against him for filing grievances.  Specifically, he alleges that: Defendant Kolvek retaliated against him and destroyed his property, (Doc. 12 at 3), that Defendant Sattler harassed him and "illegally stopped [his] drug

treatment" in retaliation "for practicing his grievance rights," (*id*.), that Defendant Haggerty retaliated against him "for writing and practicing his grievance rights," (*id*.), that Defendant Everhart "destroyed [his] property once [he] used the grievance procedure attesting to his supervision," (*id*. at 5), that Defendant Taylor improperly opened his outgoing mail in "retaliation to stop [him] from stating the wrongs by his officers," (*id*. at 7), that Defendant Callerick retaliated against him "for writing and practicing his grievance rights," (*id*.), and that Defendant Meager opened his legal mail in "retaliation to stop [him] from stating the wrongs by his officers," (*id*.).

"Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (citation omitted).

> In order to establish a First Amendment retaliation claim, a plaintiff must prove that: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id*.

Here, Plaintiff's Amended Complaint fails to satisfy this test. To start, some of his claims allege simply that an officer or staff member "retaliated against him for filing grievances." (*See* Doc. 12 at 3,7). These allegations address only the first requirement—that Plaintiff engaged in protected conduct—and therefore fail to state a plausible claim for retaliation.

Plaintiff also accuses Defendants of destroying his property and opening or tampering with his mail in retaliation for filing grievances. Assuming that these allegations satisfy the first two requirements, they fail to satisfy the third. To show causation, the plaintiff must set forth sufficient facts to demonstrate a plausible causal connection between the plaintiff's protected activity and the alleged unconstitutional conduct. *See Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010). More specifically, the prisoner must show that the defendants' adverse action was taken "at least in part

to retaliate against the prisoner for engaging in protected conduct." *Id*. In the context of summary judgment, where a prisoner must meet a higher burden, courts generally require some evidence of retaliatory motive. *See id*. At the pleading stage, however, circumstantial evidence of retaliatory motive is often sufficient. *See id*. "This circumstantial evidence can include the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action." *Id*. at 475–76.

Here, Plaintiff does not provide circumstantial evidence of retaliatory motive that would allow the Undersigned to infer that Defendants improperly handled his mail, at least in part, due to his filing of grievances. "[A]lleging merely the ultimate fact of retaliation," as Plaintiff does here, "is insufficient to state . . . a claim under § 1983." *Jones v. Caruso*, No. 1:10-CV-812, 2011 WL 1467647, at *9 (W.D. Mich. Apr. 14, 2011) (quotation marks, citation, and alteration omitted); *see, also White v. Stephens*, No. 13-CV-2173-JDT-TMP, 2015 WL 6038014, at *8 (W.D. Tenn. Aug. 28, 2015), *report and recommendation adopted*, No. 13-2173-JDT-TMP, 2015 WL 6038824 (W.D. Tenn. Oct. 15, 2015) (dismissing "vague and conclusory" retaliation claims where complaint did not plausibly show that defendants were aware of or took action in response to plaintiff's protected conduct); *Cox v. Jackson*, 579 F. Supp. 2d 831, 848 (E.D. Mich. 2008) (dismissing retaliation claims where "plaintiff merely allege[d] that the defendants took various actions against him in retaliation for his having filed grievances" but did not "allege any specific facts showing a causal connection between defendants' action and his filing of grievances").

Consequently, the Undersigned concludes that Plaintiff has failed to state a plausible retaliation claim. But, given the gravity of the allegations pertaining to Defendants' handling of his legal mail, it is RECOMMENDED that Defendants' Motion to dismiss these claims be

GRANTED IN PART and that Plaintiff be granted leave to amend. Specifically, Plaintiff may have thirty (30) days to amend these claims.

### 4. Denial of Access to the Courts

Plaintiff also alleges that Defendants Terek, Haggerty, Kuyrn, Taylor, Callerick, Meager, and Litzenberger denied him access to the courts. These allegations fall into two general categories—claims regarding his legal mail and claims regarding access to the prison's law library.

#### a. Legal Mail

First, Plaintiff accuses several Defendants of interfering with his legal mail. Specifically, he alleges that Defendants Haggerty and Taylor opened his mail without going through the proper procedures, (Doc. 12 at 3, 7), that Defendant Callerick opened his outgoing and incoming legal mail and provided it to him without post-dates or return addresses, (*id.*), and that Defendant Meager failed to send out legal mail, withheld legal exhibits, opened his legal mail, ripped off postage dates and return addresses, delivered mail late, and sent mail late, (*id.*).

"A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) (citation omitted). When the prisoner's mail is "legal mail," there is a "heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail," especially when it impacts "the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Id.* at 874.

The Ohio Department of Rehabilitation and Correction (the "ODRC") has developed special protocols for the handling of inmate mail. ODRC policy 75-MAL-01 provides that "[a]ll

incoming mail, except legal mail, shall be processed in an area located outside of the facility or in an area of the facility designated by the managing officer and approved by the appropriate regional director to minimize possible exposure." It defines "legal mail" as "[m]ail addressed to an inmate clearly bearing the return address of an attorney-at-law, a public service law office, a law school legal clinic, court of law, or the Correctional Institution Inspection Committee [ ]." *See* ODR 75-MAL-01. Legal mail "may be opened and inspected for contraband only in the presence of the inmate-addressee." *Id.*

Here, while Plaintiff accuses Defendants of opening his legal mail in violation of ODRC policy, he does not provide any information regarding the contents of the mail. In fairness, he alleges that Defendants tampered with his mail and removed postage dates and return labels, and it is therefore possible that he may not have important information about the mail in question. But, to state a cognizable claim, the Undersigned must somehow make the finding that the mail was "legal mail." *Sallier*, 343 F.3d at 873 (whether mail is "legal mail" is a question of law for the court).

On the face of the pleadings, the Undersigned cannot make that finding. *See, e.g.*, *Rowser v. Ohio*, No. 5:12CV0610, 2013 WL 123784, at *15 (N.D. Ohio Jan. 9, 2013), *aff'd* (Dec. 4, 2013) (finding that there was "no indication" from plaintiff's complaint that a letter from the Department of Justice was "legal mail" because his complaint did not reveal the purpose or contents of the letter); *Nicklay v. Brand*, No. 1:08CV330, 2008 WL 4738386, at *2 (W.D. Mich. Oct. 27, 2008) (dismissing claim where Plaintiff did not allege that the "alleged incoming 'legal' mail was from a court or attorney or otherwise identifiable as confidential legal mail that would implicate First Amendment rights").

The Undersigned finds that Plaintiff has failed to state a First Amendment claim regarding Defendants' handling of his mail. In light of the heightened concern with prisoners' legal mail, it is RECOMMENDED that Defendants' Motion to Dismiss these claims be GRANTED IN PART and that Plaintiff be granted leave to amend these claims. Plaintiff may have 30 days to do so.

### b. Access to Law Library

Plaintiff also alleges that Defendants Kuyrn and Litzenberger denied him access to the law library. More specifically, he accuses Defendant Kuyrn "of depriving [him] the hours to litigate and research in the law library," of "not opening the library to the mandates of Federal hours that is allowed," and "of coming to work when ever [she] wants to and depriving plaintiff to access the courts," (*id*. at 6), and Defendant Litzenberger of "not opening the library to the mandates of Federal hours that is allowed," and of "letting his employees come to work when ever they want to," (*id*.).

"Prison officials are free to reasonably regulate the time, place, and manner in which library facilities are used so long as inmates are assured meaningful access to the courts." *Kendrick v. Bland*, 586 F. Supp. 1536, 1550 (W.D. Ky. 1984). Accordingly, inmates are not guaranteed "some minimum amount of time in the prison law library." *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). Rather, as the Sixth Circuit has noted, "[w]e are concerned with a right of access *to the courts*, not necessarily to a prison law library." *Id*. (emphasis in original). Therefore, to state a claim for access to the courts, a prisoner mus[t] demonstrate that the alleged [library] shortcomings have hindered his efforts to pursue a legal claim." *Tarpley v. Jefferson Cty. Commissioners*, No. 2:09-CV-00199, 2010 WL 5819058, at *4 (S.D. Ohio Dec. 13, 2010) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

Here, Plaintiff states in conclusory fashion that he was denied access to the courts. Yet he does not allege that his inability to use the law library at certain times prejudiced his ability to litigate a specific claim. *Cf. Colvin v. Schaublin*, 31 F. App'x 170, 172 (6th Cir. 2002) (holding that plaintiff stated a cognizable access to the courts claim where he "was afforded very limited access to the law library in which to file a time-sensitive motion regarding his post-conviction appeal"). Nor does he allege that he has been denied access to the law library altogether. *See, e.g.*, *Thomas v. Campbell*, 12 F. App'x 295, 297 (6th Cir. 2001) ("As Thomas admits that he has had access to the prison library, but just not as often as he desires, no constitutional violation has been established.").

Consequently, the Undersigned finds that Plaintiff's allegations regarding his access to the law library fail to state a claim. *See, e.g.*, *Russell v. Bailey*, No. 1:09-CV-878, 2011 WL 1337138, at *6 (S.D. Ohio Mar. 16, 2011), *report and recommendation adopted*, No. 1:09CV878, 2011 WL 1326422 (S.D. Ohio Apr. 6, 2011) (granting motion to dismiss, noting that "when an inmate alleges his access to the courts was denied because he was denied access to the prison library or certain books, he fails to state a claim for relief absent any showing of prejudice to his litigation"). It is therefore RECOMMENDED that Defendants' Motion to Dismiss these claims be GRANTED. And, as this is Plaintiff's only claim against Defendant Litzenberger, it is RECOMMENDED that he be DISMISSED from this action.

As for Defendant Kuyrn, Plaintiff alleges that she changed, stole, manipulated, and deleted his legal files. (Doc. 12 at 6). It is RECOMMENDED that Defendants' Motion to Dismiss these claims be GRANTED IN PART and that Plaintiff be granted leave to amend. Plaintiff shall have thirty (30) days to amend his pleadings to state a plausible access to the courts claim. The Court notes that an access to the courts claim requires a showing that Defendants' conduct actually

prejudiced his ability to litigate a nonfrivolous legal claim. *See, e.g.*, *Russell v. Bailey*, No. 1:09-CV-878, 2011 WL 1337138, at *6 (S.D. Ohio Mar. 16, 2011), *report and recommendation adopted*, No. 1:09CV878, 2011 WL 1326422 (S.D. Ohio Apr. 6, 2011) (dismissing complaint where plaintiff did not allege "that after defendant allegedly deleted his research files that he was unable to recreate his research or legal filings in a timely manner") (citations omitted).

### 5. Strip Searches

Next, Plaintiff alleges that Defendant Mike Kolvek "illegal[ly] strip search[ed] [him] in front of the entire dorm." (Doc. 12 at 3). In moving to dismiss, Defendants do not deny that the alleged strip search took place, nor do they attempt to show that it was reasonable. Rather, they assert simply that prisons are given wide deference to perform strip searches and that routine strip searches do not automatically violate the Fourth Amendment. (*See* Doc. 22 at 19–20).

Defendants are correct that prisons are afforded broad discretion to maintain security and that strip searches are not "per se unconstitutional." *Long v. Henry Cnty. Jail*, No. 117cv01141JDBCGC, 2018 WL 4839088, at *2 (W.D. Tenn. Oct. 4, 2018); *see also Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013) (noting that, given the difficulties of operating a prison, correctional officers must have discretion in choosing how to respond to these difficulties). But, strip searches are, by their "very nature an extreme intrusion upon personal privacy," and therefore, "instinctively give[] us . . . pause." *Stoudemire*, 705 F.3d at 572 (quotation marks and citations omitted).

In considering whether a particular search is reasonable, courts balance the prison's need for the search with the "invasion of personal rights that the search entails." *Salem v. Michigan Dep't of Corr.*, 643 F. App'x 526, 530 (6th Cir. 2016) (quotation marks and citations omitted). Specifically, courts "consider the scope of the particular intrusion, the manner in which it is

conducted, the justification for initiating it, and the place in which it is conducted, while also examining obvious, easy alternatives that accommodate the inmate's privacy interests at little cost to valid penological objectives." *Id*. (quotation marks and citations omitted). Relevant here, "strip searches performed in view of other inmates without a legitimate penological justification" violate the Constitution. *Id*. (citation omitted).

While not artfully pled, Plaintiff alleges that Defendant Mike Kolvek "illegal[ly] strip search[ed] [him] in front of the entire dorm." (Doc. 12 at 3). Obviously, "a strip search is more invasive when it is performed where other people can see the person being stripped." *Stoudemire*, 705 F.3d at 573. *Cf. Hargrove v. Frisby*, No. 1:17-CV-748, 2018 WL 2937466, at *3 (S.D. Ohio June 12, 2018), *report and recommendation adopted*, No. 1:17CV748, 2018 WL 3437074 (S.D. Ohio July 17, 2018) (dismissing Fourth Amendment claim where plaintiff failed to allege that defendants conducted the strip search in a place where he was overly exposed to public view).

Given the nature of strip searches generally, and the fact that Plaintiff alleges that he was strip searched in public, Plaintiff's claim against Defendant Kolvek survives Defendants' Motion to Dismiss. Accordingly, it is RECOMMENDED that Defendants' Motion to Dismiss this claim be DENIED.

### 6. Deliberate Indifference of Medical Needs

Finally, Plaintiff alleges that he was denied mental health and medical treatment. (*See, e.g.*, Doc. 12 at 4 (alleging that Defendant Aubry "depriv[ed] plaintiff mental health medical treatment" and failed to investigate mental and emotional abuse by staff workers); *id*. (alleging that Defendant Murphy failed to provide him "fair medical treatment, and refused to give [him] medical eyeglasses that [he] purchased with his own funds")).

The Eighth Amendment to the United States Constitution protects individuals against cruel and unusual punishment and includes the rights of prisoners to be provided with adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). These claims have an objective and subjective component. The objective prong "requires a plaintiff to show that the medical need at issue is sufficiently serious." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quotation marks and citation omitted). "A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (citation omitted). The subjective prong requires the court to determine whether "prison officials ha[d] a sufficiently culpable state of mind in denying medical care." *Alspaugh*, 643 F.3d at 169 (citation omitted). "Under the subjective component, the plaintiff must establish that the defendant knew of or disregarded an excessive risk to inmate health or safety." *Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at *2 (6th Cir. Jan. 23, 2009) (citation omitted).

Here, Plaintiff has failed to set forth a plausible Eighth Amendment claim. To start, his allegations that Defendants Aubry and Murphy deprived him treatment are entirely conclusory and do not satisfy either prong of the above test.

The same is true for Plaintiff's allegation that Defendant Murphy refused to provide him with eyeglasses. Under some circumstances, "the denial of prescription glasses may result in a sufficiently serious harm under the Eighth Amendment." *Summers v. Teasley*, No. 4:16CV-P141-JHM, 2017 WL 1228420, at *4 (W.D. Ky. Mar. 31, 2017). But Plaintiff does not allege that he has suffered any harm. *Compare Koehl v. Dalsheim*, 85 F.3d 86, 87–88 (2d Cir. 1996) (finding sufficiently serious medical need where plaintiff needed specifically prescribed, tinted eyeglasses to prevent severe double vision and loss of depth perception) *with Summers*, 2017 WL 1228420,

at * 4 (no Eighth Amendment violation where plaintiff failed to allege any facts showing that the deprivation of his eye glasses resulted in any harm other than headaches, which constituted "no more than a *de minimis* injury").

Consequently, because Plaintiff has failed to allege a serious medical need, it is RECOMMENDED that Defendants' Motion to Dismiss these claims be GRANTED. Because no other cognizable claims against Defendants Murphy and Aubry remain, it is recommended that they be DISMISSED from this action.

## IV. OTHER MOTIONS

### A. Motion for Preliminary Injunction

Plaintiff has also moved for a preliminary injunction enjoining prison officials from retaliating against him for filing grievances. (Doc. 14). His allegations are similar to those in his Amended Complaint. For example, he alleges that Defendants opened, withheld and tampered with his legal mail. (*Id*. at 2).

"A preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *ACLU v. McCreary Cty.*, 354 F.3d 438, 444 (6th Cir. 2003) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). When considering a motion for preliminary injunction, a district court must balance four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (citation and internal quotation marks omitted).

Under the first factor, to establish a strong likelihood of success on the merits, the movant must demonstrate "more than a mere possibility" of success. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This requires, "at a minimum," a movant to show "serious questions going to the merits." *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (citation and internal quotation marks omitted). The first factor is often determinative:

> [C]ourts have often recognized that the first factor is traditionally of greater importance than the remaining three. *See Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537 (6th Cir. 1978). In fact, the Sixth Circuit has held that when the proponent of the injunctive relief has no chance of success on the merits of the claim, the Court may dismiss the motion without considering the other three factors. *See Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). Failure to do so is reversible error. *See id.*; *Sandison v. Michigan High School Athletic Ass'n*, 64 F.3d 1026, 1037 (6th Cir. 1995).

*Stanley v. Ohio Dep't of Rehab. & Corr.*, No. C2–02–178, 2002 WL 3140935, at *3 (S.D. Ohio August 12, 2002) (denying motion for injunctive relief after evaluation only of chance of success on the merits factor); *see also City of Pontiac Retired Employees Ass'n*, 751 F.3d at 430 ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor.").

While the Undersigned takes Plaintiff's allegations regarding his mail seriously, he has not shown a strong likelihood of success on the merits of these claims. (*See supra* at 13–14). And, in cases like this one, "where a prison inmate seeks an order enjoining state prison officials, the Undersigned is required to proceed with the utmost care and must be cognizant of the unique nature of the prison setting." *Roden v. Floyd*, No. 2:16-CV-11208, 2018 WL 6816162, at *2–3 (E.D. Mich. Nov. 13, 2018), *report and recommendation adopted*, No. 16-11208, 2018 WL 6815620 (E.D. Mich. Dec. 27, 2018).

Plaintiff may attempt to pursue his claims regarding his mail through an amended complaint against Defendants. However, he has not met his heavy burden to show that the

extraordinary remedy of a preliminary injunction is warranted.  It is therefore RECOMMENDED that his Motion for a Preliminary Injunction, (Doc. 14), be DENIED.

### B. Discovery and Pleading-Related Motions

Plaintiff has filed a Motion to Amend Relief Requested.  (Doc. 32).  That Motion is GRANTED, and the Undersigned has considered Plaintiff's requested relief in reaching its decision.  Defendants' Motion to Strike, (Doc. 35), is therefore DENIED.

Plaintiff has also filed a Motion for a Subpoena to Obtain Documentary Evidence, (Doc. 15), and a Motion for Production of Documents, (Doc. 33).  These Motions are improper under this Court's local rules and the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 5(d)(1); S.D. Ohio Civ. R. 37.2.  "Objections, motions, applications, and requests relating to discovery shall not be filed in this Court . . . unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences."  S.D. Ohio Civ.R. 37.2.  "Pro se litigants are not exempt from the procedural rules in civil litigation." *Mitchell v. Clayton*, No. 13-11620, 2015 WL 71784, at *2 (E.D. Mich. Jan. 6, 2015); *see, e.g.*, *Perry v. Cousins*, No. 15-CV-13930, 2016 WL 5941831, at *2 (E.D. Mich. Oct. 13, 2016) (denying inmate's motion for discovery, explaining that "his discovery requests must first be directed to Defendant, not filed with the Court.").  Because there is no evidence that Plaintiff first attempted to exhaust all extrajudicial means before filing these Motions, Plaintiff's Motions for discovery, (Docs. 15, 33), are DENIED without prejudice, and Defendants' Motion to Strike, (Doc. 36), is DENIED as moot.

### V.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting

authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:   October 31, 2019                        /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE